UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DONAHUE A. MILLER,

                           Plaintiff,

          vs                                          1:05-CV-0429

OFFICER AMY O'BRYAN; OFFICER
PETER PALEN; and SERGEANT KILFOYLE,
Town of Ulster Police Department,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

DONAHUE A. MILLER
Plaintiff Pro Se
03-A-6829
Groveland Correctional Facility
7000 Sonyea Road
Sonyea, New York 14556

TOWNE, BARTKOWSKI & DeFIO KEAN, PC     ELENA DeFIO KEAN, ESQ.
Counsel for Defendants
7 Wembley Court
Albany, New York 12205

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Donahue Miller ("plaintiff" or "Miller") brings this action against the Town of Ulster (New York) Police Department ("police"), Officers Amy O'Bryan ("Officer O'Bryan") and Peter Palen ("Officer Palen"), and Sergeant James Kilfoyle ("Sgt. Kilfoyle").  Miller asserts four claims under 42 U.S.C. § 1983 ("§ 1983"): (1) illegal

search and seizure under the United States Constitution; (2) denial of due process under the United States Constitution; (3) forced medical treatment under New York Public Health Law; and (4) denial of right to counsel under the United States and New York Constitutions.[1]

Plaintiff moved to consolidate this case with his pending petition for a Writ of Habeas Corpus based upon the criminal convictions described below. Pet. for Writ of Habeas Corpus, Miller v. Hunt, No. 9:06-CV-0177 (N.D.N.Y. Feb. 9, 2006). Defendants opposed and cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes. There was no oral argument.

## II. FACTS

The following facts are viewed most favorably to the plaintiff.

In June 2003, Miller was employed by Superior Tree Service, a tree-cutting company owned by his friend Gavin Muller. On or about the evening of June 20, 2003, Miller and his co-workers were drinking alcohol and lighting off fireworks at Gavin Muller's home, located on Superior Tree Service property. Throughout the evening, plaintiff drank approximately ten beers and two shots of whiskey and he became "pretty intoxicated." (Docket No. 41-11 at 11.) He was so intoxicated that he "blacked-out" at several points. He stumbled out to his pickup truck parked in front of the property and got into the vehicle.

---

[1] In the complaint, plaintiff actually asserts four causes of action; however, the third and fourth causes of action are sufficiently similar such that they both can be grouped under the "denial of right to counsel" heading. Additionally, the second cause of action, arising out of medical treatment administered against Miller's will, is split into two claims; one claim is for denial of due process and the other is for forced medical treatment under New York Public Health Law. Under every cause of action, plaintiff cites to numerous sources of law, many of which do not apply. As a result, the claims listed here represent those claims that are applicable and will be analyzed accordingly.

Shortly after midnight, Dana Rice ("Rice") contacted the Town of Ulster Police Department to complain that individuals had been setting off fireworks across from her house since nine o'clock that night. Approximately fifteen minutes later, Officer O'Bryan, with Officer Palen, arrived at Rice's residence and spoke with both Rice and her neighbor, Joe Carpino ("Carpino"). Rice told Officer O'Bryan that the fireworks were coming from the Superior Tree Service property. According to Officer O'Bryan, Rice and Carpino told her that individuals were setting off fireworks from a dark colored pickup truck parked in front of the property. Carpino identified the truck and told Officer O'Bryan that he saw an individual stumbling and fall into the truck.

Officer O'Bryan got into her vehicle and drove towards the truck, to question the person inside. However, before she reached the pickup truck, Miller drove away. Officer O'Bryan then stopped the vehicle on Saw Mill Road, not more than 100 yards from the Superior Tree Service driveway. When plaintiff stopped the vehicle, he reached for the handle and then fell or stumbled out of the truck. Officer O'Bryan then asked plaintiff for his license and registration and he told her that he did not have a license. He also continually said "I'm done," referring to the likelihood that he would be going back to prison for Driving While Intoxicated ("DWI"). Plaintiff had multiple previous convictions for DWI, among other things, and had his license revoked in 1994 for DWI. He did not have a drivers license since that time.

Officer O'Bryan placed Miller under arrest for DWI and, with Officer Palen, took him to the Ulster Police Department ("police station"). While entering the patrol area of the police station, plaintiff fell when he tripped over a camera stand and suffered a

3

laceration near his left eye.[2] On a number of occasions plaintiff refused to take a chemical test. He also said that he did not want medical treatment. However, on the orders of Officer O'Bryan and Sgt. Kilfoyle, plaintiff was taken by ambulance to Benedictine Hospital and received medical treatment which resulted in four stitches above the left eye. Sgt. Kilfoyle asked plaintiff to take a chemical test at the hospital and plaintiff said "no."

Miller was charged with aggravated unlicensed operation of a motor vehicle and first degree DWI. He also had an outstanding DWI charge from February 2003. Plaintiff pled guilty to both the February 2003, and June 2003, charges for DWI. He sought review of his plea in the Appellate Division, Third Department, and the New York State Court of Appeals. Both courts upheld his convictions. Plaintiff is currently incarcerated and serving the sentence imposed as a result of his convictions.

## III. STANDARD OF REVIEW

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426, 436 (2d Cir. 1999); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317,

---

[2] Plaintiff additionally asserts that he fell outside on his way into the police station.

323,106 S. Ct. 2548, 2552 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Richardson, 180 F.3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983). Additionally, pleadings of a pro se litigant must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972) (per curiam); Nance v. Kelly, 912 F.2d 605 (2d Cir. 1990).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

Moreover, material facts set forth in the movant's statement required by the local rules are deemed admitted unless controverted in the nonmovant's statement in opposition. L.R. 7.1(a)(3). Thus, no genuine issue exists as to facts set forth in a movant's 7.1 Statement if the nonmovant fails to put such facts into controversy by a response in opposition to the summary judgment motion. See id.

5

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of plaintiff's claims on the sole ground that he waived his right to assert such claims when he pleaded guilty to the DWI charge.

A plaintiff's guilty plea does not constitute a waiver of antecedent § 1983 claims challenging the constitutionality of events preceding the guilty plea. Haring v. Prosise, 462 U.S. 306, 323, 103 S. Ct. 2368, 2378 (1983); United States v. Gregg, 463 F.3d 160,165-66 (2d Cir. 2006). If a plaintiff's guilty plea and subsequent conviction entered in state court would bar later civil challenges to police conduct, federal courts must give the state judgment the same effect under 28 U.S.C. § 1738. Haring 462 U.S. at 313, 103 S. Ct. at 2373 (citing Allen v. McCurry, 449 U.S. 90, 96, 101 S. Ct. 411, 420 (1980)). However, when a plaintiff is convicted pursuant to a guilty plea rather than at trial, the validity of the conviction is not affected by an alleged § 1983 violation because the conviction does not rest on the § 1983 violation, it rests instead on a guilty plea. Haring, 462 U.S. at 321, 103 S. Ct. at 2377 (citing Menna v. New York, 423 U.S. 61, 62-63, 96 S. Ct. 241, 242 (1975)). A plaintiff is not estopped from making a § 1983 claim for deprivation of rights unless the final verdict was entered upon the determination of that particular issue. Haring, 462 U.S. at 315, 103 S. Ct. at 2374.

Miller was convicted pursuant to a guilty plea rather than at trial. As a result, the validity of plaintiff's conviction is not affected by any alleged § 1983 violations because his conviction rested on his guilty plea. See id. at 321, 103 S. Ct. at 2377. Accordingly,

6

he is not estopped from making a § 1983 claim for damages because his conviction rested only on his guilty plea. See id. at 315, 103 S. Ct. at 2374.

Defendants point to United States v. Arango in which the court rejected the defendant's argument that his sentence should be vacated and his case remanded for an evidentiary hearing to determine the admissibility of evidence collected in an allegedly illegal search and seizure. 966 F.2d 64, 66 (2d Cir. 1992). The court in Arango held that, since the defendant pleaded guilty to charges resulting from evidence collected during the allegedly illegal search and seizure, he had waived the right to challenge the constitutionality of the stop. Id. at 66. However, while Arango similarly deals with the right to challenge the constitutionality of events that preceded a guilty plea, it differs from the present case in that Miller is not contesting a judgment of conviction. Instead, Miller is making a § 1983 claim for civil damages by challenging the constitutionality of events that preceded his guilty plea.

It is not the case, as defendants suggest, that Miller has waived his right to litigate constitutional claims resulting from the stop. Since plaintiff's plea agreement included charges that resulted from the stop, he is not able to bring forth a claim challenging his conviction; for example, alleging that his conviction should be vacated because the stop was in violation of his right to freedom from illegal search and seizure. However, he is able to bring a claim for damages alleging that the stop was in violation of his right to freedom from illegal search and seizure.

Therefore, defendants' motion for summary judgment on the ground that plaintiff waived his right to assert constitutional claims as a result of his guilty plea will be denied.

7

### B. Sua Sponte Review of Plaintiff's Claims

Incredibly, defendants did not assert any alternative grounds upon which their motion might be granted. This is an inexcusable error in judgment on the part of the defendants' attorneys. In most cases this error would cause the motion to be denied without any relief to defendants. This would result in the continued expenditure of time, effort, and financial resources of the parties and the court.

However, after reviewing the evidence in a light most favorable to the plaintiff, it is clear that all of Miller's claims lack merit. Therefore, in the interest of judicial economy, the merits of his claims will be analyzed sua sponte.

### 1. Search and Seizure Claims

Plaintiff claims that Officers O'Bryan and Palen stopped his vehicle without reasonable suspicion of illegal activity in violation of his Fourth Amendment rights[3] and without probable cause in violation of Article I, § 12, of the New York State Constitution.

The Fourth Amendment provides in pertinent part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A routine traffic stop is a "seizure" within the meaning of the Fourth Amendment and must therefore be reasonable. Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1979). A traffic stop is reasonable under the Fourth Amendment if the police officer has reasonable articulable suspicion "that a motorist is unlicensed or that an automobile is

---

[3] While plaintiff argues that the defendants lacked probable cause to stop his vehicle, the federal standard for a vehicle stop only requires that officers have a reasonable articulable suspicion of illegal activity. Accordingly, plaintiff's claim will be analyzed under that standard.

not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation the law." Id. at 663, 99 S. Ct. at 1401; United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 695 (1981). To determine whether the facts available to the officer at the time of the stop support reasonable suspicion, the circumstances must be viewed as a whole and through the eyes of a reasonable officer in that particular situation, with that officer's experience and training. United States v. Delos-Rios, 642 F.2d 42, 45 (2d Cir. 1981).

The Fourth Amendment and Article I, § 12, of the New York Constitution "generally confer the same rights"; however, under New York law, a police officer must have probable cause to believe that the driver or occupants of a vehicle have committed, are committing, or are about to commit a crime before commencing a traffic stop. People v. Robinson, 97 N.Y.2d 341, 350-51 (2001).

Prior to stopping Miller's vehicle, Officer O'Bryan had the following facts available to her: (1) Rice and Carpino saw fireworks being set off from a dark colored pickup truck on Superior Tree Service property; (2) Carpino saw an individual who stumbled into the truck; and (3) when she approached the truck it drove away. In viewing the facts in a light most favorable to the plaintiff, Officer O'Bryan had reasonable suspicion to believe that an individual inside the car had violated the law. See Cortez, 449 U.S. at 417, 101 S. Ct. at 695; Delos-Rios, 642 F.2d at 45. She additionally, had the required probable cause to stop Miller's vehicle under New York law because she had reason to believe that Miller was committing a crime. See Robinson, 97 N.Y.2d at 350-51. Thus, Officer O'Bryan had both reasonable suspicion, as required under Federal law, and probable cause, as required under New York law, to stop plaintiff's vehicle.

9

Plaintiff's illegal search and seizure claims under both the federal and New York State constitutions will be dismissed.

## 2. Due Process Claim

Miller claims that defendants forced him to receive medical treatment for the laceration near his eye in violation of his rights under the Fourteenth Amendment.[4]

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. An individual has a "significant liberty interest," under the Due Process Clause of the Fourteenth Amendment, in being free from unwanted medical treatment. Washington v. Harper, 494 U.S. 210, 221-22, 110 S. Ct. 1028, 1036-37 (1990). To determine whether an individual's right to be free from unwanted medical treatment has been violated, the relevant state interests must be balanced against the individual's liberty interests. Cruzan v. Dir., Mo. Dept. of Health, 497 U.S. 261, 279, 110 S. Ct. 2841, 2851-52 (1990) (quoting Youngberg v. Romeo, 457 U.S. 307, 321,102 S. Ct. 2452, 2461 (1982)).

Miller stated that he did not want medical treatment for the laceration near his eye. However, plaintiff has testified that he was so intoxicated that he was blacking out throughout the night. While defendants have offered no evidence that Miller consented to treatment, in his extreme state of intoxication, plaintiff was not able to intelligently

---

[4] Miller additionally alleges that this medical treatment was in violation of his right to freedom from illegal search and seizure and violated his right to equal protection, as well as a number of other New York state laws. However, plaintiff's claim will be analyzed under the applicable Fourteenth Amendment, N.Y. Public Health Law 2504(1), and N.Y. Public Health Law 2803-c(3)(e) claims.

consent to or refuse treatment.  Accordingly, defendants were proper in providing for and allowing the physicians to administer treatment to Miller for the laceration near his eye.  The state has an interest in ensuring that the people they arrest are cared for and, particularly in the case of those who are severely intoxicated, do not suffer serious injury while in their care.  If the laceration had not been treated promptly plaintiff may well have suffered a more serious injury, given the injury's proximity to his eye.  The treatment did not violate his due process rights because, given his state of intoxication, his liberty interests did not outweigh the relevant state interests involved.

Therefore, plaintiff's Fourteenth Amendment due process claim will be dismissed.

### 3. **New York Public Health Law Claims**

Miller claims that defendants forced medical treatment for the laceration near his eye, violating his rights under New York Public Health Law §§ 2504(1), 2803-c(3)(e).

New York Public Health Law § 2504(1) provides that "[a]ny person who is eighteen years of age or older . . . may give effective consent for medical, dental, health and hospital services for himself or herself, and the consent of no other person shall be necessary."  N.Y. Pub. Health Law § 2504(1).

New York Public Health Law § 2803-c(3)(e) provides in relevant part that "[e]very patient shall have the right to . . . refuse medication and treatment after being fully informed of and understanding the consequences of such actions."  N.Y. Pub. Health Law § 2803-c(3)(e).

Again, while in an extreme state of intoxication Miller told the police that he did not want medical treatment.  However, New York Public Health Law § 2504(1) provides that if a person is able to give effective consent, the consent of no other person is

11

necessary. Given his state of intoxication, to the point where he was repeatedly blacking out, Miller was not able to give effective consent. Further, New York Public Health Law § 2803-c(3)(e) requires that a person refusing treatment be "fully informed of and [understand] the consequences" of their actions. N.Y. Pub. Health Law § 2803-c(3)(e). At the time he refused medical treatment, because of his state of intoxication, plaintiff was not able to understand the consequences of his actions and was not able to intelligently refuse medical treatment.

Plaintiff's claims under New York Public Health Law §§ 2504(1) and 2803-c(3)(e) will be dismissed.

### 4. Right to Counsel Claims

Miller's third and fourth causes of action both allege a violation of his rights under the Sixth Amendment to assistance of counsel and Article I, § 6, of the New York State Constitution.[5] Specifically, Miller alleges that he was denied assistance of counsel prior to answering defendants' request to submit to chemical tests and the punitive civil sanctions that resulted.

The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the

---

[5] Miller additionally alleged that the civil penalty, imposed when he refused to submit to a chemical test without the advice of counsel, was in violation of his right to freedom from cruel and unusual punishment. This claim is without merit because the punishment he received, a $750 fine and continued revocation of his drivers license, was neither cruel nor unusual. See Zwick v. Freeman, 373 F.2d 110, 119 (2d Cir. 1967) (holding that protection against cruel and unusual punishment is "not applicable to purely civil penalties").

Plaintiff also claims that his Fourteenth Amendment due process and equal protection rights were violated when he was denied access to counsel and when he received a citation after refusing to submit to a chemical test without first speaking to his attorney. However, he did not have a right to refuse to submit to a chemical test; because of this, neither his due process nor his equal protection rights were violated when the police ignored his requests to speak with his attorney.

12

Assistance of Counsel for his defence." U.S. Const. amend. VI.  The right to counsel attaches only upon "the initiation of adversary judicial criminal proceedings" against the defendant.  United States v. Gouveia, 467 U.S. 180, 189, 104 S. Ct. 2292, 2298 (1984). This right applies to all "critical stages" of the prosecution both before, during, and after trial.  Gouveia, 467 U.S. at 189, 104 S. Ct. at 2298 (citing United States v. Wade, 388 U.S. 218, 225-27, 87 S. Ct. 1926, 1931-32 (1967)).  However, there is no Sixth Amendment right to counsel when the plaintiff is asked to submit to a chemical test because the plaintiff is "not entitled to assert the privilege [against self-incrimination]" by refusing to submit to a chemical test.  Schmerber v. California, 384 U.S. 757, 760-66, 86 S. Ct. 1826, 1830-33 (1966).

Article I, § 6, of the New York Constitution provides in relevant part that, "[i]n any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him or her."  N.Y. Const. art. I, § 6.  While Article I, § 6, is derived from the Sixth Amendment to the United States Constitution, the New York provision regarding effective assistance of counsel offers greater protection than the federal provision.  People v. Caban, 5 N.Y.3d 143 (N.Y. 2005).  However, for charges under New York State Vehicle and Traffic Law § 1194, "an individual may not condition his or her consent to a chemical test to determine blood alcohol content on first consulting with counsel."  Boyce v. Comm'r of N.Y. State Dep't of Motor Vehicles, 215 A.D.2d 476, 477 (N.Y. App. Div. 2d Dep't 1995).

The video recorded in the police station shows that Miller requested to speak with his attorney numerous times and his requests were ignored.  (Pl.'s Mem. in Opp'n,

13

Docket No. 45) Additionally, the video shows that plaintiff refused the chemical test for the first time at 01:06:56, prior to first time he requested an attorney at 01:07:59. Id. Though plaintiff's request to speak to his attorney was ignored, he may not make his consent to submit to a chemical test conditional on first being able to consult with his attorney. Thus, there are no genuine issues of material fact present in this claim.

Plaintiff's right to counsel claims will be dismissed.

## IV. CONCLUSION

While Miller did not waive his § 1983 constitutional claims for damages when he pleaded guilty to the DWI charge, none of his claims have merit.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED on other grounds;

2. The complaint is DISMISSED in its entirety; and

3. Plaintiff's motion to consolidate is DENIED as moot.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   August 3, 2007
         Utica, New York.

14